And we'll move to our fourth case this morning, United States v. Dennis. All right. Hello again, Mr. Roy. Thank you, Judge. Good morning. I'll state again for the recording, my name is Michael Roy on behalf of appellant Larry Dennis. This court should vacate Dennis' sentence and remand for resentencing. Our primary argument is that the district court erred when applying the threat of violence enhancement because it accepted the government's assertion about what the poll camera video showed without requiring the government to actually submit the video. I want to point out, first of all, the government does not dispute in their brief that if Dennis' version of facts are true, the threat of violence enhancement would not apply. I'm not going to argue that every case involving self-defense wouldn't qualify as a threat of violence. I could see circumstances in other cases where, say, someone's self-defense is guarding their drugs, and that would be a clear connection to the crime. But in this case, his version of self-defense is that his father and uncle had beaten him, left him for dead only a few days prior. That was corroborated by the PSR, which said there was a police report about that incident, and his self-defense was about that familial dispute. It wasn't relevant conduct for his drug convictions. There's a problem here in that there was no objection to the facts in the PSR, which included the post-arrest statement from your client about what was going on in this photo, or these two photos, which is that he was pointing a gun at a customer who shorted him on some money. And so that we accept because there was no objection to it, and that contradicts the sort of late-breaking self-defense argument that was raised at sentencing. I agree. That's our biggest problem, is the post-arrest statements. I wouldn't say, though, that he completely failed to object. Candidly, trial counsel should have done a better job of stating Mr. Dennis's position. But they did raise the self-defense theory not at the last minute. This was before the sentencing hearing. And his theory doesn't make any sense unless he's also arguing that the statements he made post-arrest were inaccurate, because he admits that he made false statements there, which could make sense if he's trying not to rat out family members, saying that, oh, yeah, I was trying to do self-defense against family members, or if he is saying that he was somehow coerced into making statements or that the recording is inaccurate. The government could have very easily cleared this up by submitting the recording. It said in its briefing for sentencing that it had a recording of the post-arrest statements, just like the government had the full poll camera video. But once there was no objection, the government doesn't have to come forward with the proof. And that's what I meant by a late-breaking self-defense argument. There was no objection to his own statements post-arrest that were included in the PSR, explaining that this was a customer who had shorted him some money, and that's why he pulled a gun on him. And so the obligation to object to the PSR includes his alternative version of what was going on and an obligation to object to what the PSR was saying based on his post-arrest statements. So if there was some problem with that, the time to raise that would be in the objections to the PSR, not in a sentencing memorandum later on down the road and at sentencing. I have two responses to that, Judge. The first is that his objection to the statements accurately characterizing the incident is baked into his entire argument about what the picture showed. But then second, the PSR recommended against applying the enhancement. So the government was objecting to the PSR to impose the enhancement based off the picture. So this was the government who had brought it in. It was not something that would have been part of his calculation without the government's objection. So I disagree a little bit that he had to object to the PSR in order to bring in that enhancement. And I just want to point out before moving on to the alcohol condition that everything was in the government's hands to clear this up. They have the full poll camera video. It's not part of the record, so we didn't discuss the video, but it was available. The government had it, and I wouldn't be raising this argument if I thought the video would hurt him on remand. Also, if the government felt the need to describe what the video showed outside of the pictures that it pasted into every single sentencing brief and even its brief on appeal, why not just show some of that other material instead of describing it without any citation? Unless the court has any questions about the sentence enhancement or the 3553 analysis and how the alleged armed robbery affected that, I would move on to the alcohol condition. So regarding the alcohol condition, the first thing I want to point out is, first, with the government's concession that the drug treatment condition did match the oral ruling, we have now two separate conditions in the written judgment that did not match the oral pronouncement. I think that shows more of a systematic failure in the production of the written judgment, and that weighs towards our benefit. I think that is evidence that the most likely explanation is they just mischecked the box. They made a mistake, just like they did with the drug treatment condition. Reading the court's oral ruling saying you can drink as long as you're not behind the wheel of a car when you're over .08, that you can be drunk as long as you don't commit crimes on the street while you're drunk, I think any reasonable person in Mr. Dennis' position would understand the condition being told to him being that you're allowed to be drunk, you're allowed to be over .08, as long as you don't do these extra things. And so then a written condition that says that a probation officer can show up with a breathalyzer, check him, and violate him any time he's over .08 is not what the district judge meant. Well, if we read it literally instead of holistically, then he's only allowed to drink when the Bears are losing, right? Because that's what the judge said. So I think we have to read what the judge said in the context of the sentence. I think that's what we're doing, Judge. I think the Bears example, right, it's an inclusive, not an exclusive example, right? The judge is giving a list of non-exclusive examples of what he can do. But there's nothing in it to say that, you know, you're going to get tested, and if you're above .08, you're going to be violated. And I think that this might seem relatively minor compared to, like, the length of prison time, but it's something that could have a real material effect on Mr. Dennis if his probation officer is showing up during any of their visits, which they're allowed to do, and breathalyzing him constantly. He does have some alcohol history in his PSR. But the judge's concern was not that he's at home drinking, staying out of trouble, but maybe harming his liver. The concern is if he's being drunk in public, if he's committing crimes when drunk, if he's doing boisterous behavior. And while the PSR does have evidence of perhaps a drinking problem in his past, there's not evidence of him committing crimes because he's drunk. Given the nuance that you've just laid out, you're asking for remand for the district court to revise or re-pronounce this condition. Is that correct? Yeah, I think that would be the simplest way. It would be remand for the court to clarify what the actual written judgment should be. Otherwise, I think that the most straightforward interpretation is that it's meant to be a condition against public drunkenness or dangerous behavior while drunk, and that's the definition of excessive alcohol use. But if this court sees ambiguity, a remand for clarification would be fine, too. I'll reserve the rest for rebuttal unless this court has questions. Thank you. Mr. Hennessey. Good morning, Your Honors. May it please the court? For the record, my name is Sean Hennessey, and I represent the United States. Your Honors, this court should affirm the defendant's sentence and correct the written judgment to reflect the district court's oral pronouncement of the mental health release condition. Your Honors, I'd like to start with the self-defense theory offered by the defendant in his sentencing memorandum and at the sentencing hearing. The PSR and none of its factual statements were objected to by the defendant. This dispute was injected by counsel via his sentencing memorandum and at the sentencing hearing itself. It was an attorney proffer. A defense attorney's statements denying facts in a PSR are not evidence, and nor are they enough to create a factual issue that the district court would have to grapple with, calling into the reliability of otherwise uncontested factual statements in the PSR. Your Honors, everything in the record pointed to the government's characterization of the December 22, 2020 incident. And by that, I mean the record contained photographs of the incident itself taken from a poll camera that undisputedly showed the defendant pointing a firearm at an apparently unarmed individual right outside the house from which the defendant used to stash his drugs and his proceeds and from which he sold his drugs. What's the downside on releasing the video given the dispute about who the gun may or may not have been pointed towards? Your Honor, I do not know. The record does not reflect the decision-making by the government below explaining why we only submitted photographs as opposed to the actual video. But what the record does reflect is sufficient to sustain the sentencing enhancement applied by the judge. In addition to the two photographs, those photographs were corroborated by the PSR's uncontested findings that the defendant made post-arrest statements. And I want to be clear, the finding was that the defendant made these post-arrest statements just over a month after the photographs of these incidents were created. And in those statements, the defendant said that the individual who approached him depicted in those photographs was a drug customer who had shorted him in the past, so he went into the house and got a gun. Your Honor, the making of those statements was not contested at any point in the district court. But, Your Honor, I do want to come back to something that the defendant said during his argument. The government does dispute where even if this court or the district court were to find that the self-defense theory was credible and was what happened here, that is not incompatible with application of the threat of violence. Your Honor, what is undisputed is that the defendant pointed a gun at an unarmed individual outside of the residence from which he was dealing drugs. Even under the defendant's self-defense theory, the police report that the defendant cited to noted that his father, and I believe it was his stepson, had assaulted and robbed him. It is totally compatible that the defendant was operating in self-defense while also preventing his proceeds or his drugs from being robbed at his stash house. And so I only note that because I don't think that the government has waived it. And multiple points in our response brief, we note that the photographs themselves are sufficient to apply the sentencing enhancement. So in essence, what I'm hearing is that it's still, even under the self-defense theory, it's still related to the drug business. Agreed, Your Honor. I think that is an argument that certainly remains available. And even if the district court had credited the self-defense theory, that's still consistent with applying this specific offense characteristic. Your Honor, if there are no further questions on the sentencing enhancement, I'll turn to the discretionary condition concerning the defendant's alcohol use. Your Honor, turning to this issue, the written judgment reconciles with the district court's oral pronouncement of discretionary condition 7. The district court explicitly ruled that the defendant was not to consume alcohol in excess. And, in fact, what the record shows is that the probation officer, I believe, inadvertently had suggested no alcohol use by the defendant once released. The district court caught that and explicitly said it should be excessive, not any. That was the court's ruling, that the defendant must refrain from any excessive use of alcohol. Where do you see ambiguity in the oral pronouncement? Your Honor, to the extent there is ambiguity, that's cleared up by the written judgment. And that's drawn from this court's precedent, including United States v. Harris. But what I think the record shows is, after making its ruling that the defendant was to refrain from excessive use of alcohol, the district court provided a couple examples of what excessive use could look like, which included driving drunk or committing crimes on the street. And I think a fundamental problem with the defendant's position here is that accepting the defendant's position as the accurate intention of the judge would make discretionary condition 7 superfluous with mandatory condition 1, which is that the defendant is not to commit any future state or federal crimes. If he's allowed to get drunk as long as he doesn't commit any future crimes, that's subsumed within mandatory condition 1. She never puts this limit in place of the .08. And for—so you have this oral pronouncement and then those examples. And so I guess before—the argument that the government made is that the written judgment would control here because of ambiguity. And so if there's wiggle there, I'm trying to—I'm wanting to hear argument as to why there—how is there ambiguity. I guess. Your Honor, I don't think there is ambiguity. I think that's an even-if argument. I apologize if I misstated that. But if there is ambiguity, the written judgment clears it up. And the standard for this court to employ is whether the written judgment contradicts the oral pronouncement, which it does not. Your Honors, if there is nothing further, the government asks that this court affirm the defendant's sentence and correct the mental health release condition. One final question on that correct versus remand. And you believe it's sufficient for our court to do so at this level versus a remand based upon some possible nuance? I do, Your Honor. I think there's precedent for it, and specifically it's the Garon case, if I'm pronouncing that correctly. But in the alternative, I think that this court also could remand for the sole purpose of correcting the written judgment, although I don't think that would be required in this instance. Thank you. Thank you, Your Honor. Thank you. Mr. Roy. Thank you, Judge. I'll start out by disputing the government's position that this dispute over the enhancement was injected by the defendant. It was triggered by a government objection that the enhancement should apply. After that, the burden was on the government to establish that the enhancement should apply. This is not Mr. Dennis had no reason before the government objected to the lack of the enhancement to quibble over what happened on the poll camera video because it didn't affect his guidelines before the government's objection. In response to the government's argument that a self-defense theory can still be a threat of violence, the key here is that it has to be relevant conduct to be part of an enhancement. It's not any threat of violence, anything that would trigger the enhancement. If he was a boxer and he threatened to punch someone in a boxing ring, no one would say that was a threat of violence, even though it very literally was. It wouldn't be considered relevant conduct. This is similar. There's nothing linking his dispute with his family to his drug sales, drug proceeds. The government suggests maybe his father was robbing him for drug proceeds, but there's nothing to support that in the record. That's just speculation. Lastly, on the alcohol condition, I agree with the government that there is no ambiguity, but I disagree on where the lack of ambiguity lies. I think there's no way to read in the transcript the sentence. Nobody's going to stop you from drinking as long as you don't get behind the wheel of a car with over .08 blood alcohol level. I don't think anyone would hear that and read it. Understand to me, you can never be above .08. That's taking out all the context of that sentence, unless there's further questions. Thank you very much. Our thanks to all of counsel. The case is taken under advisement.